UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

RICK E. LARSON,

        Debtor.

_____

LARRY LIEBZEIT, TRUSTEE,

        Plaintiff,

v.

UNIVERSAL MORTGAGE CORPORATION,

        Defendant and Third-Party Plaintiff,

v.

RICK E. LARSON,

        Third-Party Defendant.

Case No. 04-34605

Chapter 7

Adversary No. 05-2030

_____

MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT
_____

      The chapter 7 trustee brought this adversary proceeding to avoid the defendant's mortgage lien and preserve it for the benefit of the estate. The defendant answered the amended complaint, asserted affirmative defenses and filed a third-party complaint against the debtor. The trustee and defendant Universal filed motions for summary judgment, briefs in support of their motions, and stipulated facts and exhibits. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bank. P. 7052.

BACKGROUND

The relevant facts are not in dispute. On February 25, 2000, Daniel and Dawn Stumpf, as grantors, conveyed real property by warranty deed to Rick E. Larson, a single person, and the warranty deed was duly recorded at the county register's office on March 1, 2000. Rick E. Larson, a single person, executed and delivered a real estate mortgage to Banta Credit Union, which mortgage and subsequent assignment to Fleet Mortgage was recorded on March 1, 2000. On May 12, 2000, Rick E. Larson, a single person, executed and delivered a second real estate mortgage to Beneficial Wisconsin in the sum of $15,299.70, which mortgage was recorded on May 15, 2000.

On December 15, 2000, Rick E. Larson, a single person, executed and delivered a real estate mortgage to USA Funding in the sum of $74,100.00, which mortgage was recorded on December 28, 2000. This mortgage was assigned to Equicredit Corporation of America, and the assignment was recorded March 12, 2001. The earlier mortgages to Banta Credit Union and Fleet Mortgage were released of record.

On June 12, 2001, Rick E. Larson, a single person, refinanced the property again by executing and delivering a real estate mortgage to AAA Mortgage in the sum of $79,409.00, which mortgage was recorded on June 26, 2001. This mortgage was assigned to Wells Fargo Home Mortgage, Inc., and the assignment was recorded on June 26, 2001. Wells Fargo's mortgage was satisfied on June 10, 2003, and the satisfaction was recorded on June 12, 2003.

On October 26, 2001, Rick E. Larson, a single person, executed and delivered a second real estate mortgage to Beneficial Wisconsin in the sum of $10,600.00, which mortgage was recorded on October 26, 2001. This mortgage was released on June 27, 2003 and the release was

2

recorded July 7, 2003.

On May 22, 2003, Rick E. Larson, as a single person, refinanced a third time by executing and delivering a real estate mortgage to the defendant, Universal Mortgage Corporation, in the sum of $80,600.00, which mortgage was recorded on June 18, 2003. The proceeds of the loan were paid to Wells Fargo Home Mortgage, Inc., in full payment and satisfaction of its mortgage. When Mr. Larson applied for the Universal loan on April 7, 2003, he was identified as an unmarried man on the Uniform Residential Loan Application. The application was prepared by Triple A Mortgage Corporation. Contrary to the identification of his loan application, Mr. Larson was married to Kathleen Larson, and had been since October 30, 2001.

At the time Mr. Larson obtained the loan from Universal Mortgage Corporation, title to the real estate was held in his name alone and both he and Kathleen lived in the property. Universal did not have notice or knowledge that the debtor was married at the time he executed the mortgage and Kathleen Larson did not sign the mortgage.

On June 5, 2003, Rick E. Larson and Kathleen Larson executed and delivered a real estate mortgage to Beneficial Wisconsin in the sum of $15,119.05, which mortgage was recorded on July 7, 2003.

On October 12, 2004, Mr. Larson filed a chapter 7 petition. Kathleen Larson is designated on the petition as a non-filing spouse.

## ARGUMENTS

The trustee argues the defendant's mortgage on the debtor's homestead is invalid because it alienates an interest of a married person, the debtor and his spouse. *See* Wis. Stat. § 706.02(1)(f). The trustee, as a hypothetical bona fide purchaser under 11 U.S.C. § 544(a)(3), can

3

thus void and preserve the mortgage lien for the benefit of the estate.

The lender contends that Wis. Stat. § 766.57 provides it with a safe harbor as a good faith mortgagee who unknowingly took a mortgage from one spouse on homestead property occupied by married persons in technical violation of the statute of frauds. Under Wisconsin law, the trustee is not a bona fide purchaser for value because the mortgage was properly recorded and provided constructive notice to all subsequent purchasers. *See* Wis. Stat. § 706.05(7). Likewise, the trustee has no standing to challenge the validity of the mortgage on behalf of the non-filing spouse.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The validity of the subject mortgage has been placed into question by the trustee. It is not disputed that when the debtor granted the mortgage to the defendant, the collateral was homestead real estate, and the debtor's spouse did not sign the mortgage. Wis. Stats. § 706.02 provides in part:

> Formal requisites. (1) Transactions under s. 706.001(1) [all conveyances involving mortgages] shall not be valid unless evidenced by a conveyance that satisfies all of the following:
> ...
>
> (f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) [homestead defined] except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage....

4

Wis. Stat. § 706.02(1)(f).

Thus, the mortgage granted Universal is not valid because it does not meet this requirement. Furthermore, an instrument that encumbers homestead property but is not signed by both is void as to both spouses, regardless of their respective ownership interests. *Matter of Howe*, 20 B.R. 938, 943 (Bankr. W.D. Wis. 1982) (citing *Hait v. Houle,* 19 Wis. 472 (1865)); *State Bank of Drummond v. Christophersen*, 93 Wis.2d 148, 286 N.W.2d 547 (1980). So where does the trustee fit into this picture?

The purpose of the homestead protection in Wis. Stat. § 706.02(1)(f) is to protect the homestead and the family from unilateral action by one spouse to the detriment of the other. *Jones v. Estate of Jones*, 253 Wis.2d 158, 169, 646 N.W.2d 280, 285 (2002). The legislature has provided only one exception to the signature requirement of section 706.02(1)(f), namely purchase money mortgages. *Weber v. Weber*, 176 Wis.2d 1085, 1097, 501 N.W.2d 413, 418 (1993). Universal argues that the right to challenge the mortgage transaction is personal to Kathleen Larson, as the person whose interests were alienated by the debtor's act, and the trustee cannot stand in her shoes. Her rights and interests are not the same as those of a bona fide purchaser or a creditor, hypothetical or actual.

We do not know whether Kathleen consented to or even knew about this mortgage. *Cf. Jones,* 253 Wis.2d at 170, 646 N.W.2d at 286 (homestead rights waived by premarital agreement, making both spouses' signatures unnecessary for valid deed). Had Kathleen consented by another instrument, of course, the creditor's lien would be valid, and the trustee would have nothing to avoid. Therefore, for the purpose of this motion, we must assume, as state law provides, that she did not consent. *See Weber v. Weber*, 176 Wis.2d at 1097, 501 N.W.2d at 418

5

(1993).

The trustee asserts that since the mortgage is void, the estate succeeds to the lender's interest on account of his status as a hypothetical bona fide purchaser. 11 U.S.C. § 544(a)(3).

Section 544 provides in part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
> ...
> (3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists ....

11 U.S.C. § 544(a)(3). Although the trustee's strong-arm powers are created by federal law, their scope depends on the substantive law of the state in which property is located at the time of the bankruptcy filing. *See In re Delta Group*, 336 B.R. 405, 407 (E.D. Wis. 2004).

Wisconsin cases interpreting the joinder requirement for alienation of a homestead have not dealt with the rights of a bona fide purchaser or other third party who wishes to take advantage of an invalid mortgage. Instead, they have generally arisen in the foreclosure context, i.e., lienholder versus owner or owner's spouse, which is not the case here. The defendant contends the trustee is not a bona fide purchaser because the mortgage was properly recorded and provided constructive notice to all subsequent purchasers. *See* Wis. Stat. § 706.05(7). No one looking only at the chain of title would think that Universal had an invalid mortgage, unless, of course, they knew the Larsons personally, which does not count.

In *Matter of Howe*, 20 B.R. 938 (Bankr. W.D. Wis. 1982), the court analyzed Wisconsin law in effect before passage of the Marital Property Act and determined that a mortgage

6

purporting to encumber a homestead was invalid as to both spouses. That analysis continues to apply since the spouses' ownership interests are irrelevant to the joinder requirement. That case was decided in the context of eligibility for chapter 13, and it was held that the invalid mortgage resulted in an unsecured debt for the creditor. The interest of a trustee exercising any of his avoiding powers was not addressed.

As an additional defense, the lender contends that Wis. Stat. § 766.57 provides it with a safe harbor as a good faith mortgagee who unknowingly took a mortgage signed by one spouse in homestead real estate in technical violation of the statute of frauds. Section 766.57, Wis. Stat., provides in relevant part:

(1) In this section:

(a) "Bona fide purchaser" means a purchaser of property for value who was not knowingly a party to fraud or illegality affecting the interest of the spouses or other parties to the transaction, does not have notice of an adverse claim by a spouse and acted in the transaction in good faith.

...

(3) Marital property purchased by a bona fide purchaser from a spouse having the right to manage and control the property under s. 766.51 is acquired free of any claim of the other spouse and of any claim asserted through or under the other spouse. The effect of this subsection may not be varied by a marital property agreement.

Wis. Stat. § 766.57(1)(a), (3).

This so-called "savings clause" does not benefit the creditor under these circumstances. A creditor who enters into a transaction with a spouse who otherwise has the right to manage and control a marital property asset is protected from the claim of the other spouse. Here, however, the debtor, once he had married, had no right acting alone to manage and control homestead property. Wis. Stat. § 706.02(1)(f). The joinder requirement applies even if the homestead is in

7

the name of one spouse and is the individual property of the titled spouse.  If all or a portion of the value of the homestead is marital property titled in the name of one spouse, the general right to manage and control titled marital property does not necessarily give the titled spouse the right to encumber the property, unless the spouse otherwise has the right to do so.  Wis. Stat. § 766.51(1)(f), (1m)(b).  In other words, the savings clause does not confer a right that does not exist under other law dealing with transactions involving property.  This is the point where the lender's theory breaks down.  The savings clause would protect a creditor dealing with a spouse acting within his or her rights with respect to marital property, but Rick was not.  Thus, Universal must look elsewhere for salvation.

We do know from the facts presented that the mortgage was granted for a loan to pay off a valid mortgage that encumbered the property before the marriage.  A similar situation arose in *State Bank of Drummond v. Christophersen*, 93 Wis.2d 148, 286 N.W.2d 547 (1980).  In what the court describes as a "tangled skein of misrepresentation, negligence, and legal and factual error," an invalid mortgage was granted in a transaction resulting in the payment of a prior valid mortgage.  *Id*. at 151, 286 N.W.2d at 549.  The present case, as far as we know, does not involve jointly held property, fraud, or forgery, but it does revolve around an improperly executed mortgage that is void and fails to create a valid lien for any purpose.  Although the void mortgage did not create a lien, the Wisconsin Supreme Court held that the satisfaction of the prior valid mortgage could be reinstated of record.  In essence, the court rolled back the chain of title to a point when there was a valid mortgage and left the parties to sort out their respective rights under the earlier mortgage to the same creditor.

In this case, the earlier valid mortgage would not be to the same creditor but would be the

8

Wells Fargo mortgage, which was recorded on June 26, 2001, and satisfied of record on June 12, 2003, from the proceeds of the Universal loan.  The debtor owed nothing at filing to Wells Fargo, but Universal is equitably subrogated to its interests, having paid Wells Fargo's debt and *having recorded a mortgage that was valid on its face. Cf. Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis.2d 599, 620, 547 N.W.2d 578 (1996) (noting equitable subrogation derives from the doctrine of preventing unjust enrichment and it applies when a person other than a mere volunteer pays a debt that in equity and good conscience, another should pay).  This court holds that Universal is equitably subrogated to the earlier Wells Fargo mortgage, and the trustee as a hypothetical bona fide purchaser does not defeat its rights under that mortgage.

The fact that there was an intact chain of title distinguishes this case from cases in which equitable subrogation was rejected because the creditor failed to perfect a valid mortgage within the time limits prescribed by the bankruptcy code.  *See, e.g., In re Lewis*, 398 F.3d 735 (6th Cir. 2005) (creditor was not entitled to have its interest equitably subrogated because its own negligence caused delay in recording of mortgage); *In re Crawley*, 318 B.R. 512 (Bankr. W.D. Wis. 2004) (lender that failed to record mortgage was not entitled to be subrogated to rights of preexisting mortgages).  Furthermore, a bona fide purchaser would have had notice of Universal's interest, and the trustee cannot use his avoiding power to negate that interest in the chain of title.  Wis. Stat. § 706.05(7).

Similarly, the trustee cannot stand in the debtor's shoes to enforce the cause of action to avoid the mortgage under 11 U.S.C. § 541(a)(1).  True, an instrument that encumbers homestead property is void as to both spouses, regardless of their respective ownership interests.  *Matter of*

9

*Howe*, 20 B.R. 938, 943 (Bankr. W.D. Wis. 1982) (citing *Hait v. Houle,* 19 Wis. 472 (1865)). However, the debtor caused this problem by failing to disclose his marriage, and Universal would still be subrogated to Wells Fargo's valid mortgage. To hold otherwise would encourage debtors to conceal the existence of a spouse when a debt is refinanced.

Finally, the trustee does not succeed to any avoidance rights Kathleen might have. She is not a debtor, nor a creditor with rights the trustee can exercise. When the Larsons were married, the house Kathleen acquired rights in was subject to the Wells Fargo mortgage; equitably subrogating Universal to that mortgage does not impair her rights in any way.

Based on the foregoing analysis, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted. A separate order will be entered accordingly.

June 23, 2006

Margaret Dee. McGarity
U.S. Bankruptcy Judge